# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> § <br> v. § <br> § <br> MARIO ALBERTO MACHADO, JR., § <br> § <br> § | Case No. 4:06-cr-314-ALM-AGD-8 |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion for Emergency Compassionate Release or Sentence Modification Pursuant to § 3582(c)(1)(2) (Dkt. #732) and his Motion to Amend (Dkt. #742). Having considered the Motions and the relevant pleadings, the Court finds that Defendant's Motion to Amend (Dkt. #742) should be **GRANTED in part** and Motion for Emergency Compassionate Release or Sentence Modification Pursuant to § 3582(c)(1)(2) (Dkt. #732) should be **DENIED**.[1]

## BACKGROUND

On December 14, 2006, a Federal Grand Jury indicted Mario Alberto Machado, Jr. ("Defendant") along with twelve co-defendants on six counts, only four of which are relevant here: conspiracy to possess with intent to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846 (Count 1); possession of a firearm in furtherance of a drug trafficking crime in

---

[1] Defendant's Motion to Amend (Dkt. #742) is granted in part only to the extent that the Court is allowing Defendant to supplement his previous Motion (Dkt. #732). Consequently, the Court has considered Defendant's arguments in both Motions and his Addendum to Petitioner's Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(2) (Dkt. #732; Dkt. #741; Dkt. #742).

violation of 18 U.S.C. § 924(c) (Counts 4 and 5); possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 6) (Dkt. #1 at pp. 1–5).

On July 12, 2007, Defendant appeared before Magistrate Judge Don Bush for a change of plea hearing (Dkt. #342). Defendant pleaded guilty to Counts One and Four of the Superseding Indictment (Dkt. #342 at p. 2; Dkt. #344 at p. 1). The binding Plea Agreement explained that "the appropriate sentence for the [D]efendant is 276 months of imprisonment followed by a term of five years of supervised release" (Dkt. #344 at ¶ 5). On July 7, 2007, District Judge Michael H. Schneider accepted Defendant's plea to Counts One and Four of the Superseding Indictment (Dkt. #370; Dkt. #131).

On May 14, 2008, Judge Schneider sentenced Defendant to 276 months of imprisonment and five years of supervised release (Dkt. #548 at pp. 2–3). On December 20, 2016, Defendant was sentenced to an additional three consecutive months of imprisonment after he pleaded guilty to possessing a cellphone in prison (Dkt. #737 at pp. 1–2).

On April 17, 2020, Defendant filed a Letter styled as an Emergency Motion for Compassionate Release which the Court denied because Defendant failed to satisfy the administrative exhaustion requirement (Dkt. #718 at p. 1; Dkt. #720 at p. 2). Then, on September 9, 2020, Defendant filed another Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) arguing in large part that his health conditions,[2] the COVID-19 pandemic, and the § 3553(a) factors were suggestive that he should be released from federal

---

[2] Defendant's medical complications include type II diabetes, hypertension, and obesity (Dkt. #740-1 at p. 1; Dkt. #731 at p. 1).

incarceration (Dkt. #725). On December 15, 2020, the Court denied Defendant's motion for lack of jurisdiction (Dkt. #731 at pp. 13–14).

On March 7, 2022, Defendant filed, *pro se*, his Motion for Compassionate Release or Sentence Modification Pursuant to § 3582(c)(1)(2) (Dkt. #732). Defendant primarily asked the Court to consider whether a change in law—considering a career offender enhancement—or the "horrendous conditions" qualified as "extraordinary and compelling reasons" along with other arguments (Dkt. #732-1 at p. 3). On April 4, 2022, the Government filed its Response arguing that COVID-19 is not an extraordinary or compelling threat to Defendant and that the § 3553 factors suggest denying Defendant's Motion (Dkt. #737 at pp. 15–16). Defendant then filed his Reply on April 21, 2022 (Dkt. #740). Defendant countered by raising issues related to COVID-19 in the context of his medical complications, opposing the Government's "strict adherence to § 1B1.13," criticizing the definition of the "extraordinary and compelling" standard, and finally arguing over the § 3553(a) factors (Dkt. #740 at p. 2; Dkt. #740 at p. 5; Dkt. #740 at p. 9).

Next, on December 12, 2022, Defendant filed, *pro se*, his Addendum to Petitioner's Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(2) (Dkt. #741). Defendant argued that caselaw has increased the level of discretion the judiciary possesses when ruling on motions for compassionate release (Dkt. #741 at p. 3). Defendant highlighted that *Borden* and *Concepcion* specifically allowed enhanced discretion and that a crime including recklessness as a possible *mens rea* cannot be a "violent felony" (Dkt. #741 at p. 4). *See Concepcion v. United States,* 597 U.S. 481 (2022); *Borden v. United States*, 593 U.S. 420, 425 (2021). Moreover, Defendant alleged he was suffering from a multitude of factors related to the conditions of his incarceration at FCI Fort Dix (partially due to COVID-19 based restrictions) (Dkt. #741 at pp. 6–9). Defendant then noted that

3

§ 3553(a)(4)(A)(1) includes considering the sentencing range "subject to any amendments" (Dkt. #741 at pp. 15–16).

Then on September 20, 2023, Defendant filed his Motion to Amend (Dkt. #742). In support, Defendant argues compassionate release or a reduction in sentence is appropriate based on an alleged unusually long sentence, change in the law, criminal history sentencing changes, and rehabilitation (Dkt. #742 at pp. 1–2). Since becoming incarcerated, Defendant has completed various programs as part of his efforts to become rehabilitated (Dkt. #742 at pp. 3–4). The Court considered all the arguments in Defendant's Motions and supplemental filings (Dkt. #732; Dkt. #741; Dkt. #742).

## LEGAL STANDARD

### I.     18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)     the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they

>     are applicable, if it finds that—
>
>     (i)     extraordinary and compelling reasons warrant such a reduction; or
>
>     (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[3]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

---

[3] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation, while admirable, is insufficient on its own to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[4] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to

---

[4] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

### III. U.S.S.G.'s Policy Statement

#### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

7

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (quotations omitted).

8

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found general complaints about long-term issues without medical proof of the condition or how health is deteriorating insufficient. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

9

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[5] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[5] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[6] the United States Centers for Disease Control and Prevention,[7] and the U.S. Federal Government,[8] have made clear that the COVID-19 pandemic has ended.[9] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.     Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.     Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)     The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[6] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[7] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[8] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[9] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan.

12

23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E. Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release

13

motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among

14

similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[10] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

---

[10] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

### I. Defendant Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.

Defendants are bound by a threshold requirement to exhaust administrative remedies by requesting from the warden, or by waiver after a "lapse of 30 days" after a request to the warden has been made, to file a motion for compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A). However, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also McLean*, 2022 WL 44618, at *1 (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*). Here, the Government's Response did not invoke the exhaustion requirement; therefore, the Court will deem the matter waived. *See id.*

### II. The 18 U.S.C. § 3553(a) factors do not favor compassionate release.

Even if there were "extraordinary and compelling" reasons at hand, the sentencing factors under 18 U.S.C. § 3553(a), which Defendant bears the burden of showing, weigh against his release. Defendant claims that "[s]erving over 15-years in prison also respects the law and provides for proper deterrence from future criminal activity" without explaining his reasoning in a detailed way (Dkt. #732-1 at pp. 25–26). Additionally, Defendant argues that § 3553(a)(2)(D) (providing Defendant with "needed educational or vocational training"), § 3553(a)(2)(B) (providing "adequate deterrence"), and § 3553(a)(2)(C) (protecting the public from "further crimes" of the Defendant) support his Motion for Compassionate Release (Dkt. #742 at p. 3). Defendant also argues that the benefits of releasing him outweighed the costs of his incarceration (Dkt. #732-1 at pp. 27–29). Defendant's analysis is incomplete as § 3553(a)(2)(A) also requires Courts to consider if a sentence "reflect[s] the seriousness of the offense . . . . promote[s] respect for the law,

16

and . . . provide[s] just punishment for the offense." *See* 18 U.S.C. § 3553(a)). Granting Defendant's Motion would undermine these factors. Defendant was convicted of a serious drug-trafficking offense and possessing a firearm while committing the offense, both of which pose a danger to the community (Dkt. #342 at p. 2; Dkt. #344). In fact, law enforcement located 443 grams of methamphetamine, over $48,000 in U.S. currency, and 6 firearms at Defendant's apartment (Dkt. #544 at ¶ 9). *Cf. United States v. Wedgeworth*, No. 1:18-CR-87(8), 2024 WL 4988370, at *10 (E.D. Tex. Dec. 4, 2024) (citing *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989) ("Courts have long recognized, however, that drug dealing constitutes a danger and threat to the community."). Further, Defendant's repeated instances of misconduct, such as fighting and possessing stolen property, while incarcerated indicate that he still lacks respect for the law (Dkt. #737-1 at pp. 2–3). *See* 18 U.S.C. § 3553(a)). Thus, these § 3553(a) factors cut against granting Defendant's Motion.

Defendant argues that his rehabilitative efforts and post-conviction activity suggest he should be released (Dkt. #742 at pp. 2–4). *See United States v. Jean*, 108 F.4th 275, 279 (5th Cir. 2024). Again, they do not. Rehabilitative efforts are admirable but as the Government notes, Defendant has committed other violations and was caught possessing a cellphone for which three months was added to his sentence (Dkt. #737 at p. 2). In fact, possessing prohibited items in prison and receiving another conviction at least partially demonstrates that Defendant is still in need of rehabilitation while in the custody of the BOP. Accordingly, this § 3553(a) factor cut against granting his Motion.

After consideration of the 3553(a) factors, the Court concludes that the factors weigh against granting Defendant's Motion. The Court need not consider Defendant's arguments that

17

extraordinary and compelling reasons warrant Defendant's release because of this independent review of the sentencing factors under 18 U.S.C. § 3553(a). *See United States v. Grams*, No. 24-50686, 2025 WL 1079074, at *1 (5th Cir. Apr. 10, 2025).

## CONCLUSION

It is therefore **ORDERED** Defendant's Motion to Amend (Dkt. #742) is **GRANTED in part** only to the extent that the Court considered Defendant's additional arguments.

It is further **ORDERED** that Defendant's Motion for Emergency Compassionate Release or Sentence Modification Pursuant to § 3582(c)(1)(2) (Dkt. #732) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 24th day of July, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE